UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

METRO FOUNDATION CONTRACTORS, INC.,

                          Plaintiff,              09 CV 6796 (JGK)

            - against -               <u>OPINION AND ORDER</u>

ARCH INSURANCE COMPANY,

                        Defendant.
────────────────────────────────
ARCH INSURANCE COMPANY,

            Third-Party Plaintiff,

            - against -

MARCO MARTELLI & ASSOCIATES, INC.,
ET AL.

            Third-Party Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

    The plaintiff, Metro Foundation Contractors, Inc.
("Metro"), brought this action for damages against Arch
Insurance Company ("Arch").  Metro claimed that it was entitled
to recover on a payment bond issued by Arch.  Arch, the
defendant/third-party plaintiff, filed a third-party complaint
for indemnification against Marco Martelli Associates, Inc.,
Martelli Real Estate, Inc., Marco Martelli, Madeline Martelli,
Ronald Kuhlman, and Patrick Quigley (collectively "MMA" or
"third-party defendants"), the third-party defendants.  Arch
claimed that it was entitled to be indemnified by MMA for any

payments that it was required to pay to Metro.  MMA then filed breach of contract claims against Metro in its Amended Answer to the complaint brought by Arch.  MMA claimed that Metro had breached various contracts and was therefore not entitled to recover the amounts it claimed under the payment bond.  Metro now moves to dismiss MMA's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Alternatively, Metro asks the Court to decline to exercise supplemental jurisdiction over MMA's claims pursuant to 28 U.S.C. § 1367(c).  MMA and Arch oppose the motion.  In addition, MMA moves for a default judgment against Metro pursuant to Federal Rule of Civil Procedure 37, an Order of Contempt and sanctions against Metro for noncompliance with this Court's January 6, 2011 Order, and an Order requiring Metro to pay the reasonable expenses incurred by MMA because of Metro's failure to comply with the January 6, 2011 Order.

## I.

In defending a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence.[1]  In considering such a

---

[1] An answer to the third-party complaint was filed in November 2009. Therefore, the motion to dismiss should be treated as a motion for judgment on the pleadings under Rule 12(c).  Patel v. Contemporary Classics of Beverly

motion, the Court generally must accept the material factual allegations in the complaint as true. <u>See</u> <u>J.S. ex rel. N.S. v. Attica Cent. Schs.</u>, 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor. <u>Id.</u>; <u>Graubart v. Jazz Images, Inc.</u>, No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. <u>See</u> <u>Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)</u>, 600 F.3d 171, 175 (2d Cir. 2010); <u>APWU v. Potter</u>, 343 F.3d 619, 627 (2d Cir. 2003); <u>Filetech S.A. v. France Telecom S.A.</u>, 157 F.3d 922, 932 (2d Cir. 1998); <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. <u>Kamen</u>, 791 F.2d at 1011; <u>see also</u> <u>Leyse v. Bank of Am., N.A.</u>, No. 09 Civ 7654, 2010 WL 2382400, at *1 (S.D.N.Y. June 14, 2010).

## II.

The following facts are undisputed, unless otherwise noted.

---

<u>Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001).  No party has raised this issue and the standards under Rule 12(c) are the same as under Rule 12(b)(6).  <u>See</u> <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006).

In 2008 MMA was the general contractor/construction manager for the construction of a nursing home in New York City (the "Project").  Arch issued a bond to MMA in the amount of $29,292,754 (the "Payment Bond"), which was intended to cover the costs of labor and material for the Project.  (DeMartino Decl. ¶¶ 3-5.)

MMA and Metro entered into a series of subcontracts and change order agreements in which Metro agreed to perform construction work on the Project in exchange for payments totaling $4,616,944.40, subject to adjustments for extra work or alterations to the work.  (DeMartino Decl. ¶¶ 6-13.)  Metro performed work and furnished materials for the Project from February 2008 to January 2009.  Based on the work performed, Metro asserts that it is entitled to more than $1.7 million, which MMA has refused to pay.  (DeMartino Decl. ¶¶ 14-16.)  Metro claimed that it was a beneficiary of the Payment Bond and requested that Arch, as the issuer of the Payment Bond, pay the amount allegedly owed under the subcontracts.  Arch denied Metro's claim.

Sometime prior to April 7, 2009, Metro filed an action against MMA in the New York State Supreme Court, New York County, in which it seeks to recover directly against MMA for the amounts it claims are due for the work it allegedly performed on the construction subcontracts.  (Ha Decl. Ex. E.)

4

Metro then filed its complaint in this action against Arch on July 30, 2009.  It claims that Arch breached its contract by failing to pay the amount due under the Payment Bond and that Arch breached the covenant of good faith and fair dealing when it allegedly denied Metro's claim without conducting an independent investigation.  (Ha Decl. Ex. A ("Metro Complaint") ¶¶ 34-48.)  On September 14, 2009, Arch filed an answer to Metro's complaint and a third-party complaint for indemnification against MMA and other defendants.  (Ha Decl. Exs. B & C.)  MMA filed an Amended Answer to the third-party complaint brought by Arch on June 10, 2010.  The Amended Answer alleged that Metro breached the subcontracts and asserted claims for breach of contract, indemnification, and attorney's fees against Metro.  (Ha Decl. Ex. D.)  MMA alleges, among other things, that Metro breached the construction subcontracts by failing to perform its work in a timely and workmanlike manner and by failing to complete its work under the subcontracts.  MMA claims that Metro is liable for the cost of completing the subcontract work.  MMA also alleges that claims against Arch were improper and that it is entitled to indemnification for having to defend itself against Arch.  Metro now argues that the claims alleged by MMA in the Amended Answer should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

5

Throughout the course of this litigation, Metro has failed to comply with discovery requests by MMA.  Following refusals by Metro to produce documents responsive to MMA's Rule 34 request for documents, on September 2, 2010, this Court issued an Order requiring Metro to produce all documents responsive to outstanding discovery requests and to answer all outstanding interrogatories by September 17, 2010.  (Metro Found. Contractors, Inc. v. Arch Ins. Co., Order, Sept. 2, 2010, Docket No. 27 (the "September 2 Order").)  Metro failed to comply with this Order, and, as a result, in an order dated January 6, 2011 (the "January 6 Order"), the Court imposed sanctions by prohibiting Metro from introducing documents that were responsive to the document requests and were not produced, and awarded costs and attorneys' fees in the amount of $3,850 to MMA.  Metro Found. Contractors, Inc. v. Arch Ins. Co., No. 09 Civ. 6796, 2011 WL 70561, at *2 (S.D.N.Y. Jan. 6, 2011).[2]  The Court imposed those sanctions only after Metro made it clear that it had not produced the documents and was continuing to refuse to produce them.  The Court explained:

> Metro, in blatant disregard of [the September 2 Order], chose not to produce documents, but to rely on newly asserted objections.  Moreover, in its current papers, Metro makes clear that it is continuing to refuse to produce documents, although ordered to do

---

[2] The parties advised the Court at the argument of the current motions that there is no longer any issue with respect to Metro's responses to interrogatories.

so, because it has unilaterally determined that those
documents, although called for, are not relevant.

Id.  The Court also ordered Metro to produce all outstanding

responsive documents by January 21, 2011.

Despite the sanction and new order, Metro continued to

disobey the Court's orders and has continued to refuse to

produce the documents.  Metro has failed to produce certain

outstanding responsive documents and did not pay any part of the

sum owed to MMA under the January 6 Order.  On February 16,

2010, the Court held a telephone conference call to address

Metro's noncompliance.  Counsel for Metro admitted the

following:

> THE COURT: [I]s it correct that you've failed to
> comply with the Court's January 6, 2011 order in that
> Metro has not produced any additional documents and
> has not paid the sum of $3,850.  Is that correct?
>
> COUNSEL FOR METRO: Yes.  That is correct.  Metro has
> not made that payment.  Has not produced any
> additional documents.
>
> . . .
>
> THE COURT: First question.  Have you complied -- have
> you and your client complied with the Court's January
> 6, 2011 order?  The answer to that is no, you have not
> complied.  Correct?
>
> COUNSEL FOR METRO: That is correct, Judge.

(Tr. at 3, 5).  Counsel for Metro indicated that he could not

represent whether his client would comply with the court's

order:

7

> THE COURT: All right.  So the answer is you can't answer whether they will comply with the order because you're still discussing it with your client.  Is that correct?
>
> COUNSEL FOR METRO: That's fair, Judge.

(Tr. at 6.)  The Court stressed the seriousness of Metro's failure to comply and the range of escalating sanctions available for continued failure to comply with the Court's orders, and counsel for Metro indicated that he understood:

> COUNSEL FOR METRO: Judge, I do understand.  I do fully understand the seriousness of this and the need -- necessity of complying with the Court's order.  And again, without going to attorney-client communications, I'm doing everything I can to impress that upon them.

(Tr. at 7.)  On February 17, 2011, MMA filed a motion seeking sanctions and the reasonable expenses incurred by MMA, including attorney's fees, as a result of Metro's continued noncompliance with the discovery requests and Court orders, and requested a default judgment pursuant to Rule 37(b)(2)(A) based on Metro's violations of the September 2 and January 6 Orders.  (MMA Mot. for Sanctions, Docket No. 43; Olsen Aff. ¶2.)  At the argument of the current motions, Metro conceded that it has continued to refuse to produce the documents and has not complied with the Court orders requiring that it produce them.  Metro also has not paid the outstanding award of $3,850 in costs and attorney's fees owed to MMA.

Metro has responded to the motion for sanctions and has also filed a motion to dismiss the third-party complaint based on a purported lack of subject matter jurisdiction. The third-party complaint was pending for more than a year and a half before the motion to dismiss was filed.

### III.

### A.

Metro asserts that the Court lacks subject matter jurisdiction over MMA's claims because MMA failed to plead jurisdiction, and because MMA and Metro are not diverse. MMA does not argue that diversity jurisdiction exists over its claims against Metro.[3] Instead, MMA argues that subject matter jurisdiction exists based on the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

Subsection (a) of § 1367 states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

---

[3] The parties do not dispute that Metro is a corporation organized under the laws of New York with its principal place of business in New York. Arch is a corporation organized under the laws of Missouri with its principal place of business in Missouri. Defendants who comprise the MMA group of defendants are citizens of New York or Florida.

9

28 U.S.C. § 1367(a).  In this case, MMA's claims against Metro
are part of the "same case or controversy" as those claims
asserted by Metro against Arch.  Metro's two causes of action
against Arch are based on Metro's allegation that work it
performed for MMA was uncompensated.  MMA's breach of contract
claims against Metro arise from the same construction project
and are intended "to demonstrate that MMA does not owe a debt to
Metro and that it is actually Metro that owes a debt to MMA."
(MMA's Opp. to Mot. to Dismiss ("MMA's Opp.") at 6.)  These
claims are so related that they easily fall within the same case
or controversy for purposes of § 1367(a), and Metro does not
appear to contest this conclusion.

Metro argues that MMA is precluded from relying on
supplemental jurisdiction under § 1367(a) because of the
exclusion provided in § 1367(b).  That provision states that in
cases, such as this case, where original jurisdiction is founded
solely on diversity of citizenship, "the district courts shall
not have supplemental jurisdiction under subsection (a) over
claims by plaintiffs against persons made parties under Rule 14
[providing for third party practice] . . . when exercising
supplemental jurisdiction over such claims would be inconsistent
with jurisdictional requirements of [diversity of citizenship
jurisdiction]."  28 U.S.C. § 1367(b) (emphasis added).

Metro argues that MMA is a "plaintiff" or third-party
plaintiff for the purposes of its third-party complaint and
that, because there is no diversity of citizenship between MMA
and Metro, there can be no supplemental jurisdiction over the
third-party complaint by MMA against Metro.  Metro seriously
misreads § 1367(b).  Section 1367(b) is a limitation on the
filing of additional claims by original plaintiffs after
additional parties have been added in order to avoid an end-run
around the requirement that original plaintiffs be completely
diverse from all defendants for all claims at the time the
original complaint is brought.  An original plaintiff should not
be able to withhold asserting certain obvious claims until a
party is joined and then use supplemental jurisdiction to assert
claims against that party.  See Viacom Int'l, Inc. v. Kearney,
212 F.3d 721, 726-27 (2d Cir. 2000).  By contrast, "[b]ecause
defendants are involuntarily brought into court, their [claims
a]re not deemed as suspect as those of the plaintiff, who is
master of his complaint."  Id. at 727 (internal quotation marks
omitted) (alterations in original).  "Significantly, § 1367(b)
reflects Congress' intent to prevent original plaintiffs — but
not defendants or third parties — from circumventing the
requirements of diversity."  Id. at 726-27.  While MMA is
asserting affirmative claims for relief in this instance, that
does not make it a plaintiff under § 1367(b).  Indeed, MMA was

11

brought into the case as a third-party defendant.  The limitations of § 1367 only apply to the original plaintiff in the action.  <u>Id.</u> at 727; <u>see also</u> <u>Barefoot Architect, Inc. v. Bunge</u>, 632 F.3d 822, 836-37 (3d Cir. 2011); <u>State Nat'l Ins. Co. v. Yates</u>, 391 F.3d 577, 580 (5th Cir. 2004); <u>Grimes v. Mazda N. Am. Operations</u>, 355 F.3d 566, 572 (6th Cir. 2004); <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d 488, 492-93 (4th Cir. 1998).

Metro argues that this case is distinguishable from <u>Viacom</u> because the claims MMA is asserting against Metro are not necessary to protect MMA's interests in this case.  Metro points out that in <u>Viacom</u> the defendant moved to dismiss because a fourth-party defendant could not be joined in the defendant's counterclaims against Viacom, and the defendant argued that the fourth-party defendant was a "necessary party" under Rule 19(a).  However, in <u>Viacom</u>, the Court of Appeals assumed, without deciding, that the fourth-party defendant was a necessary party.  The construction of § 1367(b) did not depend at all on whether the fourth-party defendant was a necessary party.  Nor does the language in <u>Viacom</u> relating to Rule 19 alter the court's interpretation that § 1367(b) applies only to original plaintiffs, and is irrelevant to claims brought by third-party defendants such as MMA.  Because § 1367(b) does not apply to

MMA's claims, the Court has supplemental jurisdiction over them under § 1367(a).

**B.**

Metro requests that the Court decline to exercise jurisdiction under § 1367(c).  The Court of Appeals for the Second Circuit has held that a district court's exercise of supplemental jurisdiction is mandatory over any claim that satisfies the elements of 28 U.S.C. § 1367(a) unless the claim also falls within one of the exceptions enumerated in § 1367(c).  Itar-Tass Russ. News Agency v. Russ. Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998).

District courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  Moreover, "[o]nce a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion is informed by whether remanding the pendent state claims comports with the underlying

13

objective of most sensibly accomodat[ing] the values of economy, convenience, fairness, and comity." Itar-Tass, 140 F.3d at 446 (internal quotation marks omitted) (alteration in original).

Metro argues that this case presents "exceptional circumstances" because MMA's state law claims are virtually identical to claims that MMA had previously asserted in response to Metro's state court action.  Courts have found exceptional circumstances justifying a decision to decline to exercise supplemental jurisdiction under § 1367(c)(4) where the "claims raised in parallel state and federal actions are duplicative and the exercise of federal jurisdiction would frustrate judicial economy." SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 459 (S.D.N.Y. 2003); see also Philip Morris Inc. v. Heinrich, No. 95 Civ. 0328, 1998 WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998).  While there is substantial overlap between this action and the claims brought in state court, the duplication does not constitute an "exceptional circumstance" within the context of judicial economy, because it is not clear that judicial resources would be preserved by declining to exercise supplemental jurisdiction over the state claims in this case. See SST Global, 270 F. Supp. 2d at 467.  The same factual issues will have to be considered to address Metro's claims against Arch and Arch's claims against MMA, even if supplemental jurisdiction is not exercised over MMA's claims against Metro.

14

Moreover, this would not be an appropriate case for the Court to find "exceptional circumstances" and to decline to exercise supplemental jurisdiction.  It is Metro who has multiplied the proceedings by bringing one action against the Payment Bond insurer in this Court and a separate action against the general contractor in state court.  It cannot now assert the existence of multiple proceedings -- which it brought about -- as a reason to limit the available claims of third-party defendants who were brought into this lawsuit which it commenced.

Metro also argues that MMA's claims substantially predominate over its claims against Arch, and therefore supplemental jurisdiction should be declined pursuant to § 1367(c)(2).  This exception does not apply.  MMA's claims against Metro are directly related to Metro's claims against Arch.  If MMA prevails on its claims against Metro, then Arch, as MMA's surety, will prevail in its defenses to Metro's claims against it.  The outcome of both Metro's action against Arch and MMA's claims against Metro hinge on a determination of the underlying contractual dispute between Metro and MMA.  MMA's claims against Metro do not substantially predominate over the issues underlying Metro's claims against Arch; they are inextricably intertwined.

15

Because none of the other exceptions in § 1367(c) apply, the Court will exercise supplemental jurisdiction.

## IV.

MMA moves for this Court to issue an Order of Contempt requiring Metro to pay the reasonable expenses incurred as a result of Metro's failure to comply with this Court's orders and produce responsive documents requested by MMA in the course of discovery.  MAA also moves for a default judgment pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) based on Metro's failure to comply with the Court's orders.

Federal Rule of Civil Procedure 37(b)(2)(A) provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," which may include "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A).  The Rule further provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

The imposition of sanctions under Rule 37 is a matter of judicial discretion informed by three primary factors: (1) the defendant's fault or willfulness; (2) the adequacy of notice; and (3) the efficacy of lesser sanctions.  Sanctions should be tailored to the offensive conduct.  See Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).  Although "[s]tanding alone, a single pretrial violation, such as a failure to timely respond to a document request, 'would not ordinarily result in an imposition of a sanction of such finality as . . . entering judgment by default,'" a "continuing saga of dilatory conduct" will meet the threshold requirement for entering a default judgment under Rule 37.  Microsoft Corp. v. Computer Care Ctr., Inc., No. 06 Civ. 1429, 2008 WL 4179653, at *4 (E.D.N.Y. Sept. 10, 2008) (quoting U.S. Freight Co. v. Penn Cent. Transp. Co., 716 F.2d 954, 954-55 (2d Cir. 1983)).

Metro has declined to participate further in discovery and has blatantly disregarded multiple warnings and orders.  The Court has already sanctioned Metro for this conduct, but Metro continues to disregard the Court's orders.  The Court has already precluded Metro from relying on the documents it has continuously and willfully failed to produce.  Metro has suggested no sanction short of a default judgment on liability that will remedy its egregious failures to produce documents and its failure to comply with the Court's orders.  In short,

Metro's conduct is plainly willful.  It has continued despite the Court's warnings of severe and escalating sanctions.  At this point, no lesser sanction has been suggested or reasonably appears feasible.  Metro's conduct "demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents."  Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 640 (1976).  Therefore, extreme sanctions are justified, and the Court is inclined to grant MMA's motion for entry of a default judgment on liability on MMA's claims against Metro.  However, the Court is prepared to give Metro yet another chance to produce the required discovery materials.  Any responsive documents must be produced by June 30, 2011.  If these materials are not produced by that time, the Court will enter a default judgment on liability in favor of MMA on MMA's claims against Metro.

Because these sanctions are available under Rule 37, the Court declines to issue a finding of contempt against Metro at this time.  Contempt should only be used when necessary and the Court does not find that it is necessary yet to begin the contempt process.  See, e.g., Patterson, Belknap, Webb & Tyler, LLP v. Regia Mgmt. Corp., 97 Civ. 2624, 1998 WL 788798, at *1 (S.D.N.Y. Nov. 10, 1998).

Pursuant to Rule 37(b)(2)(C), MMA is also entitled to the costs of the current motion, including reasonable attorney's

18

fees.   Those costs are set out with particularity in the motion papers, in the amount of $3,155.82.   (Olson Reply Aff. ¶¶ 9-11.) Those costs are reasonable and will thus be awarded and assessed against Metro.

## CONCLUSION

For the reasons explained above, Metro's motion to dismiss MMA's claims alleged against it in the Amended Answer is **denied**. MMA's motion is **granted** to the extent that Metro is required to pay $7,005.82 to MMA by June 30, 2011, and to produce responsive documents not yet produced by June 30, 2011.   If Metro fails to comply with this Order, MMA should notify the Court, in which event a default judgment on liability will be entered in favor of MMA on MMA's claims against Metro.   MMA's motion is otherwise **denied**.   The Clerk is directed to close Docket Nos. 43 and 46.

**SO ORDERED.**

Dated:      New York, New York
            May 27, 2011

                                    _____
                                         John G. Koeltl
                                    United States District Judge