15RYMETC1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

METRO FOUNDATION
CONTRACTORS, INC.,

                Plaintiff,

         v.                              09 Civil 6796 (JGK)

ARCH INSURANCE COMPANY,

                Defendant.

------------------------------x


                                         May 27, 2011
                                         10:40 p.m.


Before:

         HON. JOHN G. KOELTL

                                         District Judge

2

15RYMETC1

```
1                            APPEARANCES

2    BRYAN HA, ESQ.,
     Attorney for Plaintiff
3         799 Broadway
          New York, New York
4

5    TORRE, LENTZ, GAMELL, GRAY & RITTMASTER, LLP
     Attorneys  for Defendant
6         100 Jericho Quadrangle
          Jericho, New York
7    LAWRENCE S. NOVAK, ESQ.,
          Of counsel
8

9    MASTROPIETRO-FRADE, LLC
     Attorneys  for Third-party Defendant
10   63 Franklin Street
          Saratoga Springs, New York
11   JOSHUA D. OLSEN, ESQ.,
          Of counsel
12

13                              - - -

14

15

16             THE COURT:  Metro v. Arch.

17             Parties tell us who they are, please.

18             MR. HA:  Good morning, your Honor.  Bryan Ha for the

19   plaintiff Metro Foundations.

20             MR. NOVAK:  Torre Lentz, Lawrence Novak for defendant

21   Arch.

22             MR. OLSEN:  Josh Olsen for the third-party defendant.

23             THE COURT:  All right.

24             There are two motions before me.  There is a motion by

25   Metro to dismiss the claims of the third-party defendants Marco
```

15RYMETC1

| 1 | Martelli & Associates, et al collectively MMA, and then there |
| 2 | is the motion by MMA for sanctions and for default and for |
| 3 | contempt against Metro. |
| 4 | I've read the papers.  Let's start with Metro's |
| 5 | motion. |
| 6 | MR. HA:  Thank you, Judge. |
| 7 | Under jurisdictional issue, what's critical and what |
| 8 | we believe the court should focus on the fact that MMA's claims |
| 9 | are claims for affirmative relief and that MMA is voluntarily |
| 10 | choosing to assert those claims in this on-going action against |
| 11 | Arch and Metro. |
| 12 | There is no need for MMA to assert these claims here |
| 13 | to protect any interest it may have because, one, it has |
| 14 | already asserted these claims in a state court action, it |
| 15 | asserted these claims more than a year before they even brought |
| 16 | them here and, second, MMA has no real protectable interest in |
| 17 | this action between Arch and Metro. |
| 18 | First of all, MMA is not subject to any direct |
| 19 | liability on Metro's claims against Arch -- |
| 20 | THE COURT:  They have been sued.  They are a |
| 21 | third-party defendant.  Arch brought them in. |
| 22 | MR. HA:  Respectfully, Judge, Arch brought them in on |
| 23 | an indemnification claim, under their indemnity agreement. |
| 24 | THE COURT:  Let me just follow that out.  Arch says we |
| 25 | have no liability to pay Metro.  Metro has sued us in this |

15RYMETC1

1    action.  If we are required to pay any of the amount that you

2    say you owe us, Arch says to MMA pay us because you're required

3    to pay us for any amounts that that we are required to pay to

4    Metro, and MMA says, well, if we have any potential liability

5    in this case we shouldn't have that liability because all of

6    this springs from the underlying contract between Metro and

7    MMA, the subcontract, and we don't owe any money on that

8    contract, rather, it's Metro who owes us the money because

9    Metro breached the contract so Metro is trying to come into

10   this court and seek money from Arch who seeks money then from

11   us, MMA, and it's all wrong because Metro isn't owed that money

12   and we want the opportunity to prove that.

13          Right?  Isn't that sort of the way the pleadings are

14   structured?

15          MR. HA:  This is the same situation that was presented

16   in the Siteworks case I cited in my brief.  All those defenses

17   that your Honor just outlined, those are defenses that Arch as

18   a surety is fully capable of litigating on its own.

19          THE COURT:  But it didn't, it sued MMA and MMA is in

20   the case.  There is no motion nor reasonably could there be by

21   MMA to dismiss arches claims against MMA.  MMA is in the case,

22   they are forced to defend against Arch and you started it

23   because you sued Arch, your client sued Arch, and they say

24   there is no rule of law that says just because Arch can assert

25   defenses that when Arch sues MMA MMA is precluded from any

15RYMETC1

1    defenses that it has.

2            MR. HA:  Well, MMA has no interest in the case between

3    Arch and Metro.  I tried to explain that.

4            Just back up a little.

5            Arch in its answer asserted all the defenses your

6    Honor outlined.  The only brought MMA on an indemnification

7    claim.  MMA as the bond principal is obligated to indemnify the

8    surety and, as such, it obviously has an interest in the

9    outcome of this litigation, it's interest doesn't want Arch to

10   pay Metro, it has an interest, for sure.  However, this is not

11   a protectable interest in this case and this is the scenario

12   presented in the Siteworks case.

13           It is not a protectable interest in the action between

14   Arch and Metro because Arch is fully capable of asserting and

15   litigating those defenses on its own and this is very common in

16   New York and this is discussed in the Siteworks case, it's very

17   common for a bond claimant to sue the surety alone and litigate

18   the bond claim along with the surety.  The bond principal

19   always has an interest.  It does not mean it has a protectable

20   interest in any litigation between the bond claimant and the

21   surety.

22           Even though, even though Arch -- even though MMA was

23   impleaded in this case, I don't think that that changes the

24   fact it has no protectable interest.  Whether impleaded or not,

25   the obligation is the same.  They have an obligation to

15RYMETC1

1    indemnify the surety and that's the same regardless whether it

2    is impleaded as a party or not.  That's it's only interest in

3    this case.

4            THE COURT:  The issue, the issue, though, is one of

5    whether there is proper supplemental jurisdiction, that's the

6    only issue.

7            MR. HA:  Correct, your Honor, and so --

8            THE COURT:  Then the question is whether the claims

9    that MMA seeks to assert against Metro are so related to claims

10   in the action within such original jurisdiction that they form

11   part of the same case or controversy.

12           MR. HA:  Judge, that's --

13           THE COURT:  Right?

14           MR. HA:  That is only part of the issue.  Insofar as

15   MMA is asserting affirmative claims, claims for affirmative

16   relief, it's really no different from a plaintiff intervening

17   to assert affirmative claims against another party in any case.

18   As such, 1367, paragraph C, comes into play.  We believe

19   insofar as Arch is asserting voluntarily affirmative claims

20   from relief even though it has no protectable interest --

21           THE COURT:  Let me stop you just for a moment.

22           It's clear, is it not, that the claim by MMA against

23   Metro falls within supplemental jurisdiction under 1367(a)?

24   They are part of the same case or controversy under Article

25   III, right?  They are within 1367(a), correct?

15RYMETC1

1          MR. HA:  I would slightly disagree with that.  Insofar

2     as 1367(b) comes into play --

3          THE COURT:  No, we are going to get to 1367(b) in a

4     moment.  I just want to make sure that -- I know that there is

5     the exception or exclusion in 1367(b) and we'll get to 1367(b)

6     in a moment, but I want to make sure that it's clear that these

7     claims by MMA against Metro are claims that are so related to

8     the claims in the action within the original jurisdiction that

9     they form part of the same case or controversy under Article

10    III.  Yes?

11         MR. HA:  Judge, I would say the claims are certainly

12    related.  However, the claims asserted against Arch in this

13    case are very different.  We asserted a claim for payment under

14    the payment bond.  I mean, the underlying factors are going to

15    be similar.  We also asserted a claim completely separate of

16    bad faith against Arch in connection with bringing this claim.

17         THE COURT:  Yes, but those claims arise out of the

18    allegation that Metro has not been paid on the contract that it

19    had with MMA and that, therefore, Arch is required to pay

20    MMA -- Arch is required to pay Metro because Metro hasn't been

21    paid for the work that it did for MMA, right?  Right?

22         MR. HA:  Yes.  That is the underlying dispute.

23         THE COURT:  And so my question is, when MMA says we

24    don't owe any money to Metro because Metro walked off the

25    contract, didn't perform the contract, was late in performing

15RYMETC1

1    the contract, that is a claim which is related, so related to

2    the claims that are within the original jurisdiction that they

3    form part of the same case or controversy under Article III for

4    purposes of 1367(a), before we get to 1367(b).

5              You agree with that, don't you?

6              MR. HA:  It's the same underlying facts, similar

7    underlying facts, yes.

8              THE COURT:  So it is within the same case or

9    controversy for purposes of Section 1367(a), correct?

10             MR. HA:  I'm just hesitating a little bit.  I am not

11   ready to concede as a question of law.  As a question of law I

12   don't concede that.  I do concede it arises from the same

13   underlying dispute, same similar facts, a construction

14   contract, sure.

15             THE COURT:  All right.

16             And I don't read your papers as disputing that.  You

17   assert, rather, that supplemental jurisdiction should not be

18   asserted because it is prohibited by 1367(b) or the court

19   should choose not to exercise supplemental jurisdiction under

20   1367(c).

21             You don't argue in your papers that, Judge, this isn't

22   part of the same case or controversy under 1367(a), right?

23             MR. HA:  That's correct, Judge.

24             THE COURT:  So you say, Judge, you must dismiss this

25   case under 1367(b) because, in effect, MMA is a sufficient

15RYMETC1

1    plaintiff under 1367(b) and there is no diversity so you must

2    dismiss, or you should dismiss under 1367(c), right?

3              MR. HA:  That's correct, Judge.

4              THE COURT:  So let's get to 1367(b).

5              The cases seem to say clearly that 1367(b) applies

6    only to the original plaintiff.  That's what then Judge

7    Sotomayor said in Viacom.

8              MR. HA:  Respectfully, Judge, I would disagree with

9    that.  It doesn't only apply to the original plaintiff.  The

10   Siteworks case which I cite in our papers comes to mind.  In

11   that case a party attempted to intervene as a defendant and the

12   reclassified that party's status and said by looking at the

13   nature of the claims, that these are voluntarily asserted

14   claims for affirmative relief and reclassified the party as a

15   plaintiff or akin to a plaintiff and therefore excluded under

16   1367(b).

17             THE COURT:  That was a voluntary party that came in

18   and was not otherwise in the case, right?

19             MR. HA:  Voluntary, voluntary asserted claims.

20             THE COURT:  Voluntary asserted party.  The party

21   didn't have to be in the case, right?

22             MR. HA:  Right.

23             THE COURT:  MMA did not choose to be in the case, MMA

24   was sued by Arch.

25             MR. HA:  Right, it was sued on an indemnification

15RYMETC1

1    claim.  It chose to assert affirmative claims for damages

2    against, against Metro.  I mean, when one is impleaded it

3    doesn't change the fact --

4              THE COURT:  There is no case, and you can correct me

5    if I am wrong, that stands for the proposition that a

6    third-party defendant who is brought into a case should be

7    treated as an original plaintiff for purposes of 1367(b),

8    right?

9              MR. HA:  What you are --

10             THE COURT:  No, no.  We take one at a time.  The

11   answer to that question is no, there is no such case, right?

12             MR. HA:  There is no specific such case.  However,

13   there are cases --

14             THE COURT:  Hold on.  Just answer the question and

15   then you can further explain.

16             There is no case, none, that holds that a third-party

17   defendant who is involuntary brought in the case should be

18   prevented from bringing claims because that party should be

19   reclassified as a plaintiff for purposes of 1367(b), right?

20   There is no such case, right?

21             MR. HA:  I'm not sure I can answer that question yes

22   or no, I presuppose --

23             THE COURT:  Just tell me based on your research have

24   you come across any such case?

25             MR. HA:  I have come across cases that says that you

```
 1    have -- first before presupposing that this is a third-party

 2    defendant, you have to look at the nature of the claims being

 3    asserted; was there a voluntary claim, whether there are

 4    protectable interest to determine whether or not the

 5    third-party defendant is, in fact, a third-party defendant.

 6              THE COURT:  I don't understand what the problem is.

 7    They didn't voluntary come in the case, they were sued; they

 8    were sued.  They are in the case only because they were sued.

 9    They were brought in as a third-party defendant, Arch sued

10    them.  Arch brought them in, third-party defendant, right?

11              MR. HA:  Right.

12              Yes, Arch brought them in --

13              THE COURT:  Viacom tells us, and you can correct me if

14    I am wrong, that the purpose of 1367(b) is directed against

15    original plaintiff because you don't want to let an original

16    plaintiff avoid bringing some claims against some defendants

17    because that might destroy diversity so they wait to bring a

18    claim until someone else brings in a party and then they assert

19    a claim, and so Viacom tells us 1367(b) is really directed

20    against original plaintiffs who attempt to avoid the

21    requirements of complete diversity and that's why it's directed

22    at original plaintiffs, and it says that.

23              MR. HA:  That's one of the purposes of 1367(b).  I

24    think it's also designed to prevent someone from masquerading

25    as a defendant who is, in fact, bringing claims as a plaintiff.
```

1          THE COURT:  Once they are sued, they are not

2     masquerading, they have been sued.  There is nothing that they

3     did to voluntary enter the case, they were sued.  And then the

4     question is whether they are precluded having been sued from

5     asserting a claim because there is a provision that limits the

6     claims that original plaintiffs can bring.

7          Go ahead.

8          MR. HA:  I hate to seem like I'm going around in

9     circles, but my point is even if they were sued on an

10    indemnification claim, that doesn't change the fact that they

11    don't have a protectable defendable interest in the main action

12    between the surety and Metro and, therefore, in asserting

13    direct claims -- I mean, they are suing voluntarily for

14    affirmative monetary relief, they are suing as a plaintiff.

15         I think, again, we have to look at the nature of the

16    claim and what capacity they are suing as.  And in the Viacom

17    case, and this goes directly to the point, the exact quote in

18    that case, and I will read it verbatim, we hold as a

19    jurisdictional matter it is feasible for Taylor Forge, the

20    party that was brought in, to file any claims necessary to

21    protect it's interest in this case.

22         That's a distinction here.  You file a claim necessary

23    to protect an interest in the case as a defendant as opposed to

24    filing a claim for affirmative relief voluntarily and this

25    distinction was recognized in the MCI case.

15RYMETC1

1              THE COURT:  You are reading from the portion of the

2       opinion that dealt with Rule 19 rather than that dealt with

3       1367(b), right?

4              MR. HA:  Actually, it states in two separate portions

5       of the opinion.  First it says in the introductory paragraph at

6       the end, in the second paragraph, the last sentence the court

7       says Taylor Forge is already present in the case as a

8       fourth-party defendant and could file any claim necessary to

9       protect it's interest under the court's supplemental

10      jurisdiction without destroying diversity jurisdiction.

11             What's important here -- in the Viacom case there is

12      no question that these claims were necessary to protect that

13      parties' interest.  The district court had found in that case

14      that Taylor Forge was a necessary party who has to bring those

15      claims and on appeal the Court of Appeals assumed, without

16      deciding, yes, it's a necessary party that has to bring this

17      claim to protect it's interest, and that is a critical

18      distinction here, your Honor.

19             A party that has to assert -- has to bring these

20      claims to protect their interest or losing them versus a party

21      who doesn't have an any protectable or defendable interest but

22      just choose to voluntarily assert claims for affirmative

23      monetary relief.

24             The MCI case specifically addresses this distinction

25      and the definition is a defined claims necessary to protect a

15RYMETC1

party's interest as claims that must be asserted to protect an

interest put in issue by the federal action but put in issue by

the federal action and likely to be lost without the party's

intervention.

          We don't have that here.  There is no interest here

that MMA is going to loss by not asserting these claims.

Again, it's only interest is as a bond principal who has an

obvious interest in the outcome of the litigation and doesn't

want to have to indemnify the surety, but that's not a

protectable interest in the litigation between Arch and Metro,

and all the defenses, every single defenses that your Honor

outlined that are defenses, again, establish in case law a

surety is fully capable of presenting and litigating on its

own.

          As a matter of fact, the defense and the claims that

have been raised here are pretty run-of-the-mill type of

defenses in cases.  The bond principal always comes in and

says, well, we didn't do anything wrong, they breached,

therefore, we're not liable.

          The MCI case was the Northern District of Texas and it

involved an intervening party, it did not involve a third-party

defendant involuntary brought into the case.

          MR. HA:  That's correct, your Honor.  Again, we have

to look at the nature of the claims being brought.  The case is

a Northern District of Texas, but it is cited in the Siteworks

15RYMETC1

```
 1    case and also cited in the Viacom case.
 2              THE COURT:  Okay.  Next.
 3              MR. HA:  Just in closing on that issue, we submit that
 4    the Siteworks case is directly on that.
 5              On the issue whether the court should decline to
 6    exercise jurisdiction under 1367(c).
 7              THE COURT:  Siteworks was also an intervenor, right?
 8              MR. HA:  Yes, your Honor.  But, again, we have to look
 9    at the nature of the claims and the circumstances under which
10    it brings its claims.
11              I mean, the ultimate point here is there are no
12    difference in intervening party --
13              THE COURT:  Of course there is.  Of course there is.
14    1367(b) applies to plaintiffs and it is intended to avoid an
15    end run around the requirement that the plaintiff have complete
16    diversity with respect to all defendants and all claims by
17    avoiding -- by eliminating the situation where a plaintiff
18    could avoid some claims or some defendants in the expectation
19    that they would be brought in by others and then assert a claim
20    after the fact.
21              That's just not the case when a party is involuntary
22    brought into a case in this case as a third-party defendant.
23    They didn't intervene.
24              And then the question is, should they be precluded
25    from asserting any claims that they otherwise had against the
```

15RYMETC1

```
 1    parties in the case, which are part of the same case or

 2    controversy.

 3              MR. HA:  They cannot assert claims necessary to

 4    protect their interest in the case, but not voluntarily claims

 5    for affirmative relief which is what they are doing here.  I

 6    think in asserting claims for affirmative relief is no

 7    different than an intervening party.

 8              THE COURT:  And all of this was brought about because

 9    your client decided that it would sue separately on the bond

10    and separately on the underlying contracts in two separate

11    courts and the other parties offered to have all of the

12    litigation in one court and your client decided not to do that,

13    right?

14              MR. HA:  My client has an absolute right to do that.

15    It is common in New York.

16              THE COURT:  Go ahead.

17              MR. HA:  It has an absolute right to do so, to sue the

18    surety separately.  This happens frequently and, again, this is

19    discussed in the Siteworks case, not uncommon situation, there

20    is nothing alarming or unfair about it.  The plaintiff has an

21    absolute right to sue the surety separately.  That doesn't mean

22    that it has to be penalized --

23              THE COURT:  Nor does it mean that the third party

24    defendant has to be penalized and will defend the case without

25    the ability to raise certain claims that it claims it otherwise
```

15RYMETC1

1    has.

2           MR. HA:  It is not penalized because the surety is

3    fully capable of asserting, of defending those claims on its

4    own without it being present.  And they are already litigating

5    these claims, they are already prospecting their interests in

6    the state court action where the parties are asserting claims

7    against each other.

8           THE COURT:  Go on.

9           MR. HA:  On the issue whether the court should

10   exercise jurisdiction, assuming that there is jurisdiction, I

11   just want to emphasize the point that was raised in my papers,

12   and that is the extreme prejudice that would result if the

13   court were to exercise jurisdiction over their claims because

14   Metro as the plaintiff under 1367(b) is precluded from

15   asserting claims back directly against MMA.  I think that

16   circumstance, the prejudice from that is a substantial factor

17   weighing against exercising jurisdiction.

18          And this was an important consideration for the court

19   in the Viacom case.  The same argument was made that the court

20   should not exercise jurisdiction and the court discussed this

21   potential prejudice and found that there was no prejudice to

22   the plaintiff in that case because the fourth-party defendant

23   in that case -- in fact, there was no prejudice because the

24   plaintiff in that case did not have any claims, had waived any

25   claims it had against the fourth-party defendant because the

15RYMETC1

1    plaintiff had no claims, therefore, the courts said, okay,

2    there is no prejudice so under this circumstance we will go

3    ahead and exercise jurisdiction.

4         However, that is the exact opposite situation here, we

5    do have claims that it would be unfair for us not to be able to

6    assert if they are allowed to use their defenses against us.

7         THE COURT:  Go ahead.

8         MR. HA:  We also have other arguments for why the

9    court should decline to exercise jurisdiction but they are in

10   the papers.  Unless the court has questions, I can answer any

11   questions the court may have.

12        THE COURT:  All right.

13        Let me listen to MMA.

14        Mr. Olsen.

15        MR. OLSEN:  Thank you, your Honor.

16        Before I get into the substance of the 1367(a) through

17   (c), I just wanted to dispel a couple of brief things that I

18   believe were cited incorrectly by counsel and recognized by

19   your Honor and make sure I have that on the record and then, of

20   course, I will answer any questions that your Honor has

21   directly to what your Honor has requested of me.

22        First off, as you recognize in the Siteworks case, the

23   case in the Southern District, it was an intervening party, it

24   was not a proper third-party defendant after having been

25   brought in with a third party.

15RYMETC1

1          The same with the case of MCI out of the Northern

2     District of Texas.  Both parties dealt with intervening

3     defendants.  In fact, Siteworks was a client of our firm and I

4     am very familiar with that case as well.

5          THE COURT:  Go slowly.

6          MR. OLSEN:  The Viacom case is interesting, because

7     counsel goes through Siteworks, MCI and also an additional

8     state court case in New York for the proposition that our claim

9     should not be heard when Viacom comes up, which is the only ace

10    in his favor which addresses third-party practice or in the

11    case of Viacom the fourth-party defendant.  He determines that

12    case to be inapposite and its odd since Judge Sotomayor made

13    clear in that case the reason behind 1367(b) as your Honor

14    recognized is the original plaintiff from asserting non-diverse

15    claims.

16          As to his assertion that we do not have a protectable

17    interest, if Metro prevails against Arch and Arch makes its

18    claim in good faith, we are liable to Arch for that money, a

19    potential multi-million dollar expense out of the pocket of our

20    client.  I think it's a very real and very protectable

21    interest.

22          To the actual statute, 1367(a) I think we can all

23    agree is the same case or controversy.

24          In Metro's complaint against Arch they devote 26

25    paragraphs in the complaint detailing the contract or

1    subcontract between Metro and Marco Martilli, they detailed

2    Metro's alleged performance pursuant to that subcontract and

3    they detail Marco Martilli's alleged breach of that subcontract

4    by allegedly failing to pay Metro what they were due.

5         Now, in terms of 1367(b), as your Honor recognized,

6    the law in the Second Circuit as well as the plain language --

7         THE COURT:  1367 --

8         MR. OLSEN:  (b), your Honor.

9         The plain language of the statute as well as the law

10   of the Second Circuit in Viacom is that 1367(b) only withdraws

11   jurisdiction over claims by the original plaintiff in the

12   action or intervening plaintiff in this action, not claims

13   asserted by defendants or third parties.

14        That understanding has also been recognized in the

15   research I have seen by every case that addresses the issue,

16   including the Third, Fourth, Fifth, Sixth Circuits and three

17   commentators that also addressed it, and my research I found

18   not a single case that that was not the interpretation the

19   courts reached when looking at 1367(b).

20        In terms of 1367(c), whether or not the court should

21   decline to exercise jurisdiction, in counsel's papers they only

22   assert that there are exceptional circumstances in the sense

23   that there is also pending a state court action that is being

24   litigated between the parties.  But on this issue I think it is

25   important to recognized obviously that Metro is a plaintiff in

1    the state court action.  As your Honor heard Metro was afforded

2    the opportunity by counsel to arch to litigate the claims

3    against the bonding company in the state court action, declined

4    to do so and commenced a separate action in federal court.  I

5    don't understand how Metro can now complain they are prejudiced

6    by litigating two claims in two separate actions when they are

7    the plaintiff that initiated it.

8              It's not unfair, also, because we are -- Marco

9    Martilli is in the federal court action as a proper third-party

10   defendant.  I don't think that is disputed at all.

11             We need to protect ourselves by asserting claims

12   against Metro, because those claims, and counsel to Arch will

13   probably go into this a little more detail, but those claims

14   are essentially co-extensive with the defenses of Arch in that

15   Arch can only be liable to Metro to the extent that Marco

16   Martilli is liable to Metro.  If Marco Martilli establishes by

17   their permissible claims that in essence it's not Marco

18   Martilli that is liable to Metro, actually, Metro is liable to

19   Marco Martilli, then Marco Martilli cannot be liable to Arch.

20             So our affirmative claims against Metro operates as

21   defenses to Arch's claims against Marco Martilli just as Marco

22   Martilli's affirmative claims against Metro operate as a

23   defense of Arch to the claims of Metro, because Arch is only

24   liable to Metro to the extent that Marco Martilli is liable.

25             In essence these claims and defenses overlap so not

1    only are they part of the same case or controversy, but they

2    are so interwoven with each other that it would be impossible

3    to litigate it without these claims being asserted against

4    Metro.

5              In fact, even if these claims on Marco Martilli, the

6    affirmative claims were dismissed or the court declined to

7    exercise jurisdiction over Marco Martilli's claims, even if we

8    call these affirmative claims, these claims would have to be

9    litigated in these cases because they operate as a defense on

10   the part of Arch to the claims against Metro, because if Marco

11   Martilli can establish the affirmative claims against Metro

12   then Arch can prevail on its claims against Metro.

13             I think clearly 1367(a) is satisfied.

14             I think based on all the case law of the circuits that

15   have been referenced, 1367(b) is not applicable in the sense

16   that we were brought in as a third-party defendant.  Obviously

17   Marco Martilli would rather not be sued and did not seek to

18   intervene into this action, they were brought in by Arch.  And

19   as permissible under supplemental jurisdiction Marco Martilli

20   as a third-party defendant asserted affirmative claims against

21   plaintiff.

22             Now, to say that these are voluntary claims, they

23   shouldn't count somehow, I don't see how that works.  That

24   would mean essentially that any time a defendant asserts

25   counterclaims against a plaintiff they are no longer a proper

1    defendant, they are -- they should be reclassified as a

2    plaintiff.

3           I mean, just in closing on the exceptional

4    circumstances part, I think these claims are so related to the

5    underlying litigation they must be litigated to really dispose

6    of the matter in its entirety.

7           Thank you, your Honor.

8           THE COURT:  All right.  Thank you.

9           Yes.  There was a reference to Arch, so I will listen

10   to Arch, also.

11          MR. NOVAK:  Thank you, your Honor.

12          To follow up on the last statement that Mr. Olsen

13   made, I think nothing could be less exceptional than having a

14   bond principal and a bond surety prosecuting the same defenses

15   based on the same breach of a contract by plaintiff.

16          We, the surety and it's principal, MMA, signed the

17   same instrument.  There are two signatures on the payment bond,

18   one of the surety, one of the principal.  It's no different

19   than if a bank sued a guarantor or a co-signer on a credit loan

20   and then that guarantor brought in the car owner, the principal

21   borrower on the loan, for indemnity, obviously they are a

22   proper party in the case.

23          And if the defense against the claim, our defense is

24   identical, that Metro is in breach of its contract.  The court

25   would need to adjudicate the issue whether Metro is in beach of

15RYMETC1

1    the contract and if they are in breach of the contract all that

2    Marco's affirmative claim accomplishes is that instead of

3    simply -- we don't cap the amount of damages that the court

4    will nevertheless need to determine resulted from that breach.

5            So from Metro's claim, let us say, that they performed

6    a million dollars of work and should be paid for that under the

7    payment bond, and Marco, as a defense, or the surety adopting

8    Marcos defense is, no, you may have performed a million dollars

9    worth of work, but you also breached the contract by walking

10   off the job, by using improper materials or some such thing

11   caused a million and a hundred thousand dollars in damages,

12   they would offset, and the mere fact that the court would now

13   be in a position as a result of the third-party defendant's

14   claims to also award them a judgment for the hundred thousand

15   dollars is hardly exceptional circumstance.  If anything, it's

16   a savings of judicial resources as your Honor pointed out to my

17   partner Mr. Rittmaster put an affidavit in this case, plaintiff

18   had every opportunity to litigate in one court.

19           Mr. Ha has indicated it's not unusual to sue surety

20   without suing a principal.  True enough, we have several cases

21   of that ilk.  But what is unusual is to sue the surety in one

22   court and the principal in another court simultaneously.  We

23   have never seen that.  A divide and conquer strategy, really a

24   strategy where in this court he wield, Metro welds only a

25   sword, they can get a positive judgment against the surety and

1    they will be paid if they prevail, but they do not have to

2    defend against a possible affirmative claim coming back at

3    then.  They can win, but they can't lose.  And that is what we

4    believe the strategy that Metro attempted to forge with its

5    divide and conquer in two different courts.

6          However, the law does afford the parties protection,

7    due process protection.  If Arch is to be liable to Metro in

8    this case, we have a clear claim over against our principal.

9    We are really vicariously liable because we signed the same

10   instrument.  They would be the chief wrongdoer and we have a

11   direct claim over against them whether by their indemnity

12   agreement or by virtue of common law, and plaintiff knows all

13   that because we produced our discovery and in discovery we have

14   an indemnity agreement and there is no doubt we have that --

15   that Marco has a huge interest in this claim and would

16   essentially have to compensate us for every penny that we were

17   to pay to the plaintiff should the plaintiff prevail and it

18   would be Kafkaesque if that party, Marco, would not be able to

19   raise the defenses.

20          THE COURT:  Okay.  Thank you.

21          MR. HA:  Judge, may I briefly reply?

22          THE COURT:  Briefly.

23          MR. HA:  I just want to briefly reply to Arch's

24   counsel's suggestion that Metro somehow is trying to get away

25   with not having to deal with the affirmative claims of MMA.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15RYMETC1

|   |   |
|---|---|
| 1 | That is just not true.  And I think as Mr. Olsen conceded in |
| 2 | his oral argument, all their claims, even if the judge decides, |
| 3 | even if your Honor decides not to hear them, these claims could |
| 4 | be and has been fully asserted by Arch in this case.  I mean, |
| 5 | we have to defend against -- |
| 6 | THE COURT:  So all of the issues with respect to |
| 7 | whether Metro was in breach of its contracts with MMA and |
| 8 | whether Metro completed it's work in a timely fashion, whether |
| 9 | Metro walked off the job, whether Metro was late, whether Metro |
| 10 | was in breach of its contract, all of those issues are in this |
| 11 | case in any event because they are all appropriately raised by |
| 12 | Arch, is that right? |
| 13 | MR. HA:  Right. |
| 14 | THE COURT:  That's right, right? |
| 15 | MR. HA:  That is asserted by Arch -- |
| 16 | THE COURT:  All of those issues are already in the |
| 17 | case, right? |
| 18 | MR. HA:  Yes, they have asserted -- |
| 19 | THE COURT:  Okay.  So they are already in the case, |
| 20 | which underlines why 1367(a) plainly applies. |
| 21 | But moreover, if all of those issues are in the case |
| 22 | and all of them have to be litigated, it's very hard to see why |
| 23 | there are exceptional circumstances that would save judicial |
| 24 | resources by not letting MMA make the same claims that are in |
| 25 | this case anyway. |

15RYMETC1

| 1 |         MR. HA:  But two points, your Honor.  Number one, the |
| 2 | fact that these have been asserted, the issues have been |
| 3 | asserted -- |

         THE COURT:  Go slowly for the court reporter, please,
and for me.

         MR. HA:  Number one, the fact that these issues have
been raised as defenses goes to show why MMA does not have a
protectable, any real protectable interest in this case because
the defenses are being litigated by the surety.  That's why
they are paying for affirmative monetary relief.

         THE COURT:  You know, try and follow, you know, my
questions.  All right?

         It makes no sense to argue as you do that judicial
economy could be saved or the claims being raised by MMA
overwhelm the other claims which are properly in the case,
which is another argument which you raise in your papers, when
you tell my that all of those issues, all of that evidence is
being raised by Arch anyway.  All of those issues are already
in the case.  So hard to see that this is a case of exceptional
circumstances or the issues that MMA is trying to raise
overwhelm the other issues in the case, they are already here,
they are already in the case, there are no exceptional
circumstances.  There is no overwhelming issue that MMA is
raising to overwhelm the other issues in the case.  You say
they are all being raised by Arch anyway.

 1              MR. HA:  It is the same underlying facts --

 2              THE COURT:  Isn't that right?

 3              MR. HA:  It is the same underlying facts and

 4     circumstances, but those claims that they are asserting, MMA

 5     asserting has already been litigated in the state court action.

 6              THE COURT:  They are being litigated in this action

 7     and they are being litigated in the state action because you

 8     decided to bring two claims, you decided to bring two cases.

 9              MR. HA:  On the exceptional circumstances issue, it

10     also the fact that we cannot bring claims against MMA.  They

11     are in a position that they can assert direct claims against

12     us, but we cannot assert claims against them.  That is a

13     significant prejudice and moreover it will be avoided because

14     we have the claims in state court.

15              THE COURT:  Okay.  Anything else?

16              MR. HA:  Just in closing I just want to note that I

17     understand that Siteworks case and MCI case are different

18     because they involve intervening parties, but I would just urge

19     the court to please consider our argument that the court has to

20     look at the nature of the claims and determine the proper

21     status of the parties and that if the claim is voluntary, like

22     those are a question -- it is identical to the situation where

23     a party intervenes voluntarily to the claims, it's the nature

24     of the claims and the circumstances of the claims that the

25     court must look at and, again, this is different from those

1  cases, but I believe that this argument should be seriously

2  considered by the court.

3  　　　　THE COURT:  All right.  Thank you.

4  　　　　MR. HA:  Thank you, Judge.

5  　　　　THE COURT:  Metro's motion to dismiss the claims by

6  MMA is denied.  The claims plainly fall within supplemental

7  jurisdiction under 28 U.S.C. Section 1367(a).  They are not

8  precluded by 1367(b) and there is no basis under Section

9  1367(c) for the court to decline to exercise supplemental

10  jurisdiction.  I have carefully reviewed the parties' papers

11  and I will shortly issue a decision which explains in greater

12  detail why the motion is being denied.

13  　　　　That brings us, then, to the motion for sanctions and

14  contempt.

15  　　　　I will deal with that motion in a moment.

16  　　　　I see that there are parties in at least one criminal

17  case who are now in the courtroom and I always give priority to

18  criminal cases, so I would ask the parties in Metro to wait

19  until I complete the other cases and then I will deal with the

20  remaining issues.

21  　　　　Thank you.

22  　　　　MR. HA:  Judge, may I just make one request.  In the

23  order denying Metro's motion, I would ask that the court

24  consider certifying the order for an interlocutory appeal.

25  Grant me that request.

15RYMETC1

1           THE COURT:  On what basis?

2           MR. HA:  This is an important jurisdictional question,

3    your Honor.

4           THE COURT:  Under what particular statute?  You want

5    interlocutory certification under 1292(b)?  Is that what you're

6    looking for or is there some other provision?

7           MR. HA:  Judge, I haven't briefed that issue.  I'm

8    just making that request now, but if your Honor would like I

9    would be happy to submit that in writing making that request.

10           THE COURT:  Do the other parties have any view?

11           MR. OLSEN:  I have a brief response to that, your

12    Honor.

13           I would only say in objecting to his request for it to

14    be certified, the well-established law in the Second Circuit

15    where 1367(a) and (b) do not apply it is within the sound

16    discretion of the court under 1367(c) to exercise discretion

17    and I do not see that being overturned.

18           Further, the only issue that he did cite in his papers

19    which he could then preserve for appeal is that there is a

20    pending state court action parallel to this and this issue was

21    addressed to the Woodford case in the Second Circuit which is a

22    precedent in the circuit which says a pending state court

23    action is no bar to a parallel federal court proceeding and

24    that the issues will only be ripe for res judicata down the

25    line so there is no basis for appeal and the Second Circuit has

1   already addressed it.

2              MR. NOVAK:  Your Honor, if I may be heard, also.

3              On the issue of the interlocutory appeal, my

4   understanding is that is really most appropriate where the

5   proceedings in the case could cause some prejudice should they

6   go forward and it's appropriate to get an expedited ruling from

7   the Second Circuit before this case were to end.  As we have

8   gone ad nauseam almost in the last half hour all of the issues

9   raised by --

10             THE COURT:  I'm sorry, I'm sure your comment was not

11  directed to the court but, rather, to the parties.

12             MR. NOVAK:  Of course, your Honor.  I will strike

13  that.

14             I meant as has been explored in great detail over the

15  last half hour all of the issues and I believe conceded by the

16  plaintiff at this point on the questioning by your Honor that

17  all of the issues will be litigated regardless of whether

18  plaintiff's motion is granted or denied.

19             THE COURT:  All right.

20             To the extent that this is an application under

21  1292(b) for an interlocutory appeal from the decision to deny

22  the motion to dismiss the claims by MMA against Metro, the

23  motion is denied without prejudice, of course, to an

24  application on papers.

25             On the basis of all of the papers before me it's plain

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15RYMETC1

1    that this is not an order that involves a controlling question

2    of law as to which there is substantial ground for difference

3    of opinion.  The Second Circuit has been clear on the issue in

4    the Viacom case.  There is no other case that has been brought

5    to my attention that casts doubt on what the Second Circuit

6    said in Viacom.

7            To the extent that the issue is whether the court

8    should decline to exercise supplemental jurisdiction under

9    1367(c), that's a matter of the application of well-established

10   Second Circuit law and there is no reasonable basis for the

11   court to decline to exercise jurisdiction and no substantial

12   grounds for a difference of opinion.  This is also not a case

13   where an immediate appeal may materially advance the ultimate

14   termination of the litigation.

15           Metro delayed for over 15 months to bring a motion to

16   dismiss the claims.  Metro initially raised the defense of lack

17   of jurisdiction, but never brought the motion to dismiss until

18   it was served with a sanctions motion, a second sanctions

19   motion for failure to produce discovery otherwise required in

20   the case.

21           If Metro thought that an immediate decision by the

22   Court of Appeals would have materially advanced the case it

23   could have brought a motion 15 months ago, but never did, and

24   under all of the circumstances the motion would not have been

25   meritorious at that point, either.

15RYMETC1

1        The parties have already said that the issues in this

2   case are already going to be litigated irrespective whether the

3   claims by MMA against Metro remain in the case or not so that

4   an immediate appeal would not materially advance the ultimate

5   termination of the litigation.

6        So for all of those reasons the oral application for a

7   certification for an immediate interlocutory appeal under 28

8   U.S.C. Section 1292(b) is denied.

9        MR. HA:  Without prejudice and we can make a written

10  application?

11       THE COURT:  You can, but based upon what you have said

12  I see no merit to the application based on what you told me.

13       What Metro has done now for the second time is to

14  raise arguments which have no merit in response to discovery

15  requirements.  When faced with discovery requirements

16  initially, faced with an order to produce documents Metro

17  responded by saying the documents are irrelevant, therefore,

18  we're not going to produce them.

19       When faced with a subsequent motion for sanctions now,

20  Metro now says we're going to bring a motion to dismiss the

21  claims in an apparent effort to try to moot, though it would

22  not, it's requirements to participate in discovery.

23       I never preclude parties from making motions so, of

24  course, you can make a motion, but do not think that making

25  that motion in any way affects the discovery obligations of

15RYMETC1

1    Metro or the outstanding orders that the court has issued

2    requiring Metro to make discovery and to pay sanctions.

3            Yes, Metro can continue to make motions.  If Metro

4    wants to make a motion for an immediate certification under

5    1292(b), of course Metro can make that motion.

6            As I said, it is difficult to see how that motion can

7    have any merit based upon what you've told me, but I never

8    preclude parties from making motions.  But I want to underline

9    that does not change Metro's obligations.  Just because you

10   make a motion, that doesn't stay anything.

11           Do you understand that, Mr. Ha?

12           MR. HA:  Yes, Judge.

13           THE COURT:  So after we deal with the other motions,

14   we will then return to the remaining applications.  And I will

15   issue a written opinion soon so that you can see the written

16   opinion and the order denying the motion to dismiss MMA's

17   claims against Metro.

18           All right.

19           MR. HA:  Thank you, Judge.

20           MR. OLSEN:  Thank you, your Honor.

21           (Recess)

22           (Continue on next page)

23

24

25

15RYMETC2

| | |
|---|---|
| 1 | THE COURT:  Okay.  We now turn to the motion by MMA |
| 2 | for sanctions and contempt. |
| 3 | Mr. Olsen. |
| 4 | MR. OLSEN:  Thank you, your Honor. |
| 5 | As your Honor indicated, this is the third-party |
| 6 | defendant's motion pursuant to Rule 36.  We are seeking an |
| 7 | order of default judgment as against Metro Foundation on Marco |
| 8 | Martelli's claims against Metro, an order of contempt and the |
| 9 | award of attorneys' fees pursuant essentially to a discovery |
| 10 | dispute that has been outstanding now for approximately 15 |
| 11 | months. |
| 12 | As your Honor is aware from our previous discovery |
| 13 | motions your Honor signed in January, it stems from a demand |
| 14 | for discovery and inspection which the third-party defendant |
| 15 | served upon Metro on March 18 of last year, that Metro did not |
| 16 | respond to that -- |
| 17 | THE COURT:  It is both document requests and |
| 18 | interrogatories? |
| 19 | MR. OLSEN:  Correct, your Honor, at that time it was |
| 20 | both. |
| 21 | Obviously we followed up with good faith letters prior |
| 22 | to our previous discovery motion, there was electronic |
| 23 | communications e-mail as well as, numerous telephone calls, |
| 24 | also in-person, before the First Department on this matter in |
| 25 | the state court action. |

15RYMETC2

1          Eventually, we had telephone conference with your

2     honor on October 2 of last year at which time your Honor

3     ordered Metro to produce documents subject only to privilege

4     objections by the 17th of September.

5          They produced some documents which were largely

6     duplicative which we had in our possession.  We brought this to

7     the court's attention by way of a follow-up telephone

8     conference at which point you granted a motion -- granted leave

9     to make a discovery motion.  We did in October of last year.

10          Your Honor issued a January 6 memorandum and order

11     finding that Metro, in violation of the court's previous

12     September 2 discovery order as well as Marco Martilli's

13     discovery demands, your Honor expressly held in your Honor's

14     decision that Metro was in possession of these documents and

15     was willfully failing to produce them.

16          Your Honor at that time did not believe that more

17     severe sanctions were warranted.  Your Honor gave Metro to

18     January 21 of this year to produce those documents.  In

19     addition, your Honor awarded attorney fees in the sum of

20     $3,850.

21          Neither of those two things have been complied with.

22     No additional documents have been produced whatsoever, and I do

23     not anticipate counsel making the argument they have been

24     produced, and no part of the $3,850 has been given to Marco

25     Martelli.  I don't anticipate that counsel will argue that it

1    has been.

2           Now Court of Appeals Judge Chin articulated in

3    American Cash Corp. case, which is one from the Southern

4    District, a six prong standard for imposing litigation ending

5    sanctions, which are outlined in detail in my papers.

6           Briefly, the first being willfulness.  Your Honor has

7    already held that Metro's violations were willful in the

8    previous opinion.

9           The second is a history of non-compliance.  This has

10   been outstanding for 15 months despite discovery demands,

11   follow-up letters, e-mails, in person conversations,

12   conferences before the state court in which the same exact

13   issues were raised.  In fact, we also made a motion in state

14   court and were granted similar relief to your Honor's relief in

15   the first discovery motion.  I think that clearly demonstrates

16   the history.

17          The effectiveness of lesser sanctions is the third

18   element.  In this case there already have been lesser sanctions

19   and they clearly were not effective in that despite those

20   sanctions being issued, not only did Metro not comply, but they

21   made no bones about the fact that they weren't complying and in

22   the last telephone conference before this court before making

23   the instant second motion counsel could not even indicate

24   whether Metro plans to comply in the future.

25          The fourth element, previous warnings issued to the

1    non-compliant party.  I believe the record is abundantly clear

2    based on your Honor's January 6 decision, the previous

3    September 2 telephone conference and even in its last telephone

4    conference we had before this court where we sought permission,

5    your Honor even suggested to Mr. Ha the possibility of criminal

6    contempt.  I think there can be no clearer warning than telling

7    an attorney he might end up in contempt.

8            The fifth element is the client's complicity.

9    Obviously I do not have firsthand information on whether or not

10   this strategy is being implemented by counsel to Metro or

11   whether it is at the discretion or at the direction of Metro.

12   I'm not sure that that matters only so far as we're not getting

13   what has been ordered.  If it is counsel's responsibility he

14   can speak to that and bear the consequence of it.  If he is

15   saying that it's his client's responsibility, then the client

16   should bear the default judgment as well.

17           The sixth element is the prejudice to the party that

18   these things are not being disclosed to.

19           The Second Circuit has shown or has outlined that

20   prejudice to the parties can be shown by having to expend

21   needless amount of time seeking this.

22           Obviously, the first motion we brought outlined the

23   needless amount of time that we had seeking this discovery and

24   your Honor granted our motion and awarded fees granting our

25   fees seeking discovery.  That did not work and that's why we

1    are back here again seeking the same discovery and in this case

2    they reply to the default judgment.

3           Now, I was going to say in opposition Metro said, but

4    essentially in light of your Honor's previous determination

5    Metro has no opposition to this case.  As your Honor already

6    ruled on the subject matter issue, Metro's opposition that it

7    didn't need to produce based on the subject matter jurisdiction

8    is fairly moot.

9           Again, as your Honor brought up on a previous motion

10   Metro's stern opposition to this motion is quite reminiscent of

11   their opposition to our first motion where it said MMA made

12   improper payments to subcontract as a matter of law and,

13   therefore, Metro could unilaterally determine despite your

14   Honor's order and our request that these documents were just

15   not relevant and need not be produced.

16          In this case rather than produce the documents and

17   then make a motion to dismiss based on subject matter

18   jurisdiction counsel actually sought additional time to serve

19   his opposition to our default motion which we filed first.

20   That was granted and then he filed the motion to dismiss and

21   then he opposed our default motion.

22          But what I was going to say prior to your Honor's

23   earlier ruling this morning, even if your Honor had completely

24   dismissed all of Marco Martelli's claims as against Metro, we

25   would still be a proper third-party defendant entitled to this

15RYMETC2

1   discovery and Metro would still be the plaintiff in this case

2   that brought the action subjecting itself to jurisdiction of

3   the court and obviously the discovery orders of your Honor.

4          So I cannot think of any more flagrant violation of

5   two discovery orders of this court as well as it is less

6   violations in the sense of failing to disclose the information

7   coupled with the fact in the last telephone conversation Mr. Ha

8   had no indication if Metro ever intend to comply with this,

9   whether it would pay our money your Honor ordered the last

10  time, suddenly they had a good faith belief in the last year

11  and a half that Marco Martelli's claims were not subject to the

12  subject matter jurisdiction of the court and they, therefore,

13  didn't need to comply again with your Honor's ruling.

14         I just want to summarize my argument by quoting now

15  Court of Appeal Judge Chin in the American Cash Corp. case

16  where he held that in granting a Rule 37 default motion, he

17  said, this is a quote, nor will any lesser sanctions suffice.

18  I denied defendant's first request for a default judgment as I

19  opted instead for lesser sanctions, an order compelling

20  discovery and the imposition of fees and costs.  Not only did

21  plaintiff fail to comply with the order, it only paid some $700

22  of the fees and costs.  And that's when Judge Chin issued the

23  default order on the Rule 37 motion.

24         Now, in this case it's even a step further.  Not only

25  has Metro failed to comply or even claim that they complied

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15RYMETC2

with your Honor's two previous orders as well as their

discovery demand, they haven't paid over a penny that your

Honor previously ordered.

         I respectfully submit there can be no clear case and

based on the guiding principles of the Second Circuit for a

default judgment under Rule 37.  The Second Circuit is very

clear that it will not put up with these tactics and it's not

going to just push things down the road where counsel has to

make repeated discovery motions to obtain compliance with the

discovery demands.

         So I would ask your Honor to award default judgment in

favor of Marco Martilli's, to schedule an inquest to ascertain

Marco Martelli's damages as against Metro, to hold Metro and/or

counsel to Metro in contempt at a sum fixed by your Honor per

day until they fully comply with, if your Honor grants the

default motion, until they fully complied with paying us the

$3,800 and whatever your Honor deems sufficient for purposes of

this motion in terms of a monetary fund.

         That's all I have.

         THE COURT:  Okay.

         Mr. Ha.

         MR. HA:  Judge, I will start by saying I do understand

the seriousness of this.  I stated in Frank DeMartino's

affirmation, declaration which we submitted in opposition to

MMA'S motion, they acted on a sincere believe that this court

1    did not have jurisdiction over the case of MMA.

2              I do understand the court's ruling --

3              THE COURT:  By the way.  That can't, that can't

4    possibly be right or a position that could possibly be held in

5    good faith, that the court has no jurisdiction over Metro.  I

6    mean, that is -- just because you say it's in good faith

7    doesn't make it in good faith.

8              As I said at the telephone conference on February 16,

9    Metro brought this case.  Metro brought this case.  Metro

10   submitted itself to the jurisdiction of the case by bringing

11   the case.  No, no lawyer can say in good faith that our client

12   takes the position in good faith that the court has no

13   jurisdiction over it.  It just can't.  I mean, you can say the

14   words, but they are just not right.

15             MR. HA:  Judge, I have done my best to advised Metro.

16   I'm not obviously going into attorney-client communication of

17   the case, I tried my best to advice Metro, I have done my best

18   as an attorney to advice Metro and obviously I can't get into

19   any attorney-client communications, but I understand what your

20   Honor is saying, but the fact is it is Metro's believe, they do

21   believe there was lack of jurisdiction.

22             THE COURT:  What does that mean?

23             They brought the case, there were documents requested,

24   whether they are relevant to -- whether they are documents and

25   interrogatories that are necessary or relevant for MMA's claims

15RYMETC2

against Metro, they are the very documents that go to the issues in the case which you have already said can be raised by Arch, so Metro still has an obligation to produce documents and answer interrogatories.

It's also not up to Metro to be it's own judge as to what it is required to produce, and it's been under orders to produce, and now you --

MR. HA:  I understand, Judge, and your Honor did raise these points at the telephone conference, I believe, back in February and your Honor did direct me as counsel to order a copy of the transcript and forward it to Metro, which I have done.

Nevertheless, Metro has believed there is a lack of jurisdiction which affects the court's power to adjudicate these claims in Mr. DeMartino's affidavit, which obviously your Honor disagrees with, but that's the position -- and that -- I believe that Mr. DeMartino's good faith belief -- and Mr. DeMartino also in his affidavit did ask should the court determine it does have jurisdiction, that Metro be given an opportunity to produce the outstanding discovery.

I believe that there is a willingness here, now that this issue of jurisdiction has been resolved, to go forward with that, your Honor.

I realize that there has been two orders issued and it's a little late in the day, but given the severity of the

15RYMETC2

1      sanctions that are being asked here and there are really claims

2      that Metro does have, and Metro hasn't been paid $1.5 million

3      on a project, Metro has real claims here, there are really

4      expenses here, this is a real case, a lot of money, that, you

5      know -- and Metro is not a huge company, it's a small company,

6      and this is -- the sanctions that is being asked is very, very

7      drastic.

8              Again, I understand there have been two orders, but

9      Metro has acted in a sincere believe on the jurisdictional

10     question and we just ask to have an opportunity now that this

11     issue has been resolved.

12             THE COURT:  Counsel for MMA said Metro has not

13     produced the documents, answered the interrogatories or paid

14     the $3,850.  Is that still correct?

15             MR. HA:  We have answered the interrogatories.  I'm

16     not sure what counsel is referring to.

17             MR. OLSEN:  Your Honor, prior to the interrogatory

18     matter has been settled prior to our first motion, it is just

19     subject to the last two orders was the documents and the

20     payment.

21             MR. HA:  I don't think they served interrogatories in

22     the federal case.  They served interrogatories in the state

23     court which we responded to.  There may be some confusion here.

24             THE COURT:  The original September 2 order required

25     the production of documents -- required Metro to produce all

1   documents responsive to outstanding discovery requests and to

2   answer all outstanding interrogatories by September 17, 2010.

3          MR. HA:  Yes.  That order was entered after a phone

4   conference, your Honor, and I believe the issue was raised in

5   the first motion for sanctions and I addressed it in my -- I

6   think there was some miscommunication, I was unclear.  We

7   asserted objections.  I thought that's what --

8          THE COURT:  If the parties tell me, if MMA says

9   interrogatories are off the table, there is no failure to

10  answer interrogatories, that's fine.

11         MR. OLSEN:  That's correct.  The subject of our first

12  motion is solely to our first documents and the subject of this

13  motion and the money.

14         THE COURT:  Okay.  Let me just confirm:

15         The documents have not been produced and the $3,850

16  has not been paid, right?

17         MR. HA:  That's correct, your Honor.

18         THE COURT:  Okay.

19         Anything else?

20         MR. HA:  I guess the only other thing I just --

21         THE COURT:  By the way, if I gave you another

22  opportunity, are you telling me that your client would now

23  produce all of the outstanding documents and pay the $3,850 as

24  well as the costs of this motion, which has been calculated at

25  $3,155.82?

1          MR. HA:  Judge, I want to be very careful.  All I can

2     represent is what Mr. DeMartino is representing in his

3     declaration, is that he be given the opportunity to produce the

4     outstanding discovery.  And, again, I will do everything I can

5     to impress upon Metro what's at stake here.

6          In direct response to your Honor, all I can represent

7     is what Mr. DeMartino has represented.  I believe he said that

8     he will produce the outstanding discovery.

9          On the money issue, given that he does not address it

10    here, I will certainly, again, do everything I can.

11         MR. NOVAK:  Your Honor, please --

12         THE COURT:  Stop, please.  I'm waiting for Mr. Ha to

13    finish.

14         Anything else, Mr. Ha?

15         MR. HA:  Yes.  I was going to say that Metro I think

16    is asking for another opportunity to comply and I believe that

17    they will.

18         Again, all I can do as counsel is urge them to do what

19    they have to do.  I think they understand the repercussions

20    from the transcript of the telephone conference.

21         And I just want to add the other thing is the issue

22    has been raised about I guess for lack of a better word my role

23    in it.  Obviously the situation I can't divulge any

24    attorney-client communications on this issue.  I just want to

25    say I have done what I can to try to comply with the court's

1 | order and impress upon them, sending them the transcript of the

2 | conference call on this issue.

3 |          THE COURT:  All right.  Thank you.

4 |          MR. OLSEN:  Briefly, your Honor, may I respond?

5 |          THE COURT:  Did Arch want to be heard on this?

6 |          MR. NOVAK:  After Mr. Olsen.

7 |          THE COURT:  No.  Mr. Olsen is giving --

8 |          MR. NOVAK:  Just briefly.

9 |          We would be relying on the same documents for our

10 | defense as our principal would and we have not obviously

11 | received the documents, either.

12 |          I want to respond to counsel's statement that the

13 | client has indicated that they would comply somehow if the

14 | court ruled adversely to them on the jurisdictional matter.

15 | That's not accurate based on my reading of Mr. DeMartino's

16 | declaration dated March 3, 2011 where he says should the court

17 | determine that it does have jurisdiction over MMA's claims,

18 | Metro respectfully requests that it be given an opportunity

19 | after the court's decision and after the Court of Appeals hears

20 | the appeal to produce the outstanding discovery, and then they

21 | go on to say, further, should the court rule, Metro

22 | respectfully requests that the court certify its order asking

23 | for an interlocutory appeal.

24 |          I submit that this indicates there is no indication

25 | that Mr. DeMartino, who apparently controls Metro, is prepared

15RYMETC2

1    to comply with the court's order.  By putting this caveat about

2    the Second Circuit determination of an appeal, I think he's

3    likely -- it speaks for itself for the fact that he is being

4    non-compliant with the court's directive.

5              THE COURT:  Okay.  Thank you.

6              Yes.

7              MR. HA:  Judge, again, we reiterate the request at

8    this point for another opportunity and I will do everything I

9    can to speak to Metro and Mr. DeMartino.

10             THE COURT:  Okay.

11             Mr. Olsen?

12             MR. OLSEN:  Briefly, your Honor.

13             First, I just want to respond to Metro's believe.

14   Metro's believe is irrelevant to the instant motion.  Metro is

15   not an attorney, Metro is a corporation and that's why

16   corporations are required to --

17             THE COURT:  Okay, I got your point.

18             MR. OLSEN:  Secondly, just to piggyback on what

19   counsel for Arch said, there is nothing about nearly a year and

20   a half or two Metro's, for lack of word, behavior, over the

21   course of this year and a half, two years litigation that would

22   demonstrate any willingness to comply with a third discovery

23   order as the history demonstrated hasn't complied with the

24   second.

25             Further, the Second Circuit has clearly recognized

1    that these sort of last second attempts to comply when they are

2    backed up against the wall is not an excuse for executing

3    sanctions.  That is precisely why the Second Circuit said that

4    not only is default judgment warranted to punish the party, but

5    it's warranted as a lesson to other parties that appear before

6    this court that this type of behavior will not be tolerated.

7              And I would just add that's exactly why Judge Chin in

8    that case I cited before after exactly two non-compliances with

9    court orders issued a default judgment.

10             That's also why the Second Circuit in the Update Art

11   case which I cited has basically said the essential question

12   raised by this appeal under similar circumstances is whether

13   this United States court strictly enforces sanctions provided

14   for non-compliance with discovery orders.  The opinion that

15   follows is a stern warning that we do.  A party who flouts

16   discovery orders does so at his peril.  If one suggests that

17   our decisions may be strong medicine, that is precisely what it

18   is intended to be.

19             I would submit to your Honor that so far we have seen

20   two absolutely flagrant violations of your Honor's two prior

21   orders.  I respectfully submit that to afforded them a third

22   opportunity to be non-compliant with your orders would just

23   further show this court disrespect and would be a complete

24   waste of time for both -- for all parties involved.

25   Essentially, the fact that they are not complying again it

15RYMETC2

1  would require a third motion.

2          That's all I have, your Honor.

3          MR. HA:  Judge, I just want to point out except for

4  one category of documents, Metro has complied with discovery,

5  has produced extensive documents in this case and responded to

6  all document demands.  This was detailed at length in my

7  opposition papers in response to the first motion.  It's just

8  not -- I mean, we're talking about one category of documents

9  here.  It's not a history of non-compliance with everything.

10  They have moved forward and produced virtually everything else

11  that they have.  And, again, your Honor, just given the drastic

12  sanctions that are being sought here and this litigation --

13          THE COURT:  Well, first of all, the sanction that I

14  already imposed precludes Metro from relying on any of the

15  documents that have not been produced.

16          MR. HA:  Yes, your Honor.

17          THE COURT:  That sanction stands.

18          The requirement is to produce the documents so that

19  it's useful, they are useful to MMA for any purposes MMA wants

20  in the case.

21          All right.  Thank you all.

22          I will issue a detailed order on this, but I don't

23  want to delay you all on this subject.  I have already

24  indicated that the motion to dismiss the claims by MMA against

25  Metro is denied.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1            Then we reach the issue of sanctions and it's plain

2    that Metro's conduct has been egregious in not complying with

3    the court's orders, not producing the discovery it was required

4    to produce.  At the same time default is a drastic remedy to be

5    used only when it's necessary.

6            I will issue an order which says for all of the

7    reasons that I have explained in terms of the history of the

8    case and the non-compliance with the prior orders, the prior

9    warnings, the willfulness, that a default judgment can be

10   justified, but that I would give Metro a final chance to

11   produce the required documents.

12           Any responsive documents must be produced by June 30,

13   2011.  If the documents are not produced by that time the court

14   will enter a default judgment on liability in favor of MMA on

15   MMA's claims against Metro.

16           Metro has asked for a final opportunity to produce the

17   documents despite all of the prior warnings and despite all of

18   the failures to abide by the court's prior orders, but the

19   court will provide a final opportunity with plain notice to

20   Metro as to what the consequences are for failure to produce

21   the documents.

22           MMA is also entitled to the costs, including attorney

23   fees, of this motion, which are $3,155.82, which, together with

24   the prior order which still hasn't been paid total $7,005.82,

25   and those amounts, that total amount must also be paid by June

15RYMETC2

1    30, 2011.

2              That's an order of the court.  It's reflected in the

3    transcript and I will issue a more detailed decision shortly

4    explaining the reasons for the decision, but counsel can obtain

5    a copy of the transcript and provide it to their clients.

6              So ordered.

7              MR. HA:  Thank you, Judge.

8              MR. OLSEN:  Thank you, your Honor.

9              THE COURT:  Good afternoon all.

10                                  - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25